Case No. 1:25-cv-00717-LTB-RTG    Document 34-4    filed 04/11/25    USDC Colorado
pg 1 of 39

Gladstone v. Summit County et. al.,        INDEX - D. STATEMENT OF CLAIMS        **Page i of iii**
1:25cv00717-RTG                            (*Supporting Facts*:)

# INDEX - "D. STATEMENT OF CLAIMS"
## (1:25cv00717- RTG)

INDEX  - "D-STATEMENT OF CLAIMS (FACTS) ……….……..………… p i - iii

# I. CORE ENTERPRISE & CIVIL RIGHTS VIOLATIONS

**CLAIM 1: Civil RICO – (18 U.S.C. §§ 1961–1964)** …………………………..… p.1

    A. Enterprise Description ……………………………….……………..….... p.1

    B. Pattern of Racketeering Activity…………………………………………..…… p.2

    C. Retaliation Against a Reporting Witness ……………………………..…… p.3

    D. Systemic Custom and Policy of Abuse …………………………………..…… p.3

    E. Specific Acts Included: …………………………………………………..…p.3

    F. Harm Incurred:……………………………………………………..… p.6

**CLAIM 2: Conspiracy to Interfere with Civil Rights and Equal Protection** ……..p.6

    A. Coordinated Civil Rights Conspiracy ………………………….……..…… p.6

    B. Malicious Prosecution and Abuse of Process …………………..…..…… p.7

    C. Denial of Equal Protection………………………………………..…..…… p.7

    D. Harm Incurred: …………………………………………………..… p.8

**CLAIM 3: Retaliation, Judicial Obstruction, and Denial of a Fair Tribunal** ……..p.8

    A. Whistleblower Retaliation Under Federal and State Law …………………..p.8

    B. Denial of Access to the Courts …………………………………………  p.9

    C. Violation of the Right to a Fair and Impartial Tribunal ………………..….. p.9

    D. Harm Incurred: …………………………………………………… p.11

**CLAIM 4: Religious Discrimination and Ideological Targeting** ……………… p.12

    A. Targeting of Plaintiff's Faith and Moral Beliefs ……………….……..…… p.12

    B. Educational Discrimination and Gender Bias under Title IX ………….…..… p.13

    C. Abuse of Therapeutic Authority to Suppress Identity and Belief …………. p.13

    D. Religious Discrimination and Violence in Community Spaces …………… p.14

    E. Harm Incurred: ………………………………………………………… p.15

# II. GOVERNMENT LIABILITY & PATTERN CLAIMS

**CLAIM 5: Monell Liability - Unconstitutional Policies, Customs and Failures** .. p.14

Case No. 1:25-cv-00717-LTB-RTG    Document 34-4    filed 04/11/25    USDC Colorado
pg 2 of 39

Gladstone v. Summit County et. al.,    INDEX - D. STATEMENT OF CLAIMS    **Page ii of iii**
1:25cv00717-RTG    (*Supporting Facts*:)

A. Policies and Customs Leading to Civil Rights Violations ……………….. p.15

B. Failure to Train, Supervise, and Intervene ………………………………... p.16

C. Institutional Endorsement of Fraternal Discrimination …………………. p.17

D. Harm Incurred: ……………………………………………………………….. p.17

## III. FRAUD, OBSTRUCTION, AND DUE PROCESS VIOLATIONS

**CLAIM 6: Fraud, Perjury, and Misconduct by Officials and Providers** ……….. p.17

A. Pattern of Fraud and Misrepresentation to Influence Judicial Outcomes …. p.18

B. Collusion and Coordinated Professional Misconduct …………………….. p.18

C. Consequences of Deception and Therapeutic Malpractice ……………….. p.19

D. Harm Incurred: ………………………………………………………….,… p.20

**CLAIM 7: Fraud on the Court, Evidence Suppression & Obstruction of Justice** p.20

A. Overview of Judicial and Prosecutorial Misconduct ……………………… p.20

B. Intentional Suppression of Exculpatory Evidence and Brady Violations … p.21

C. Record Tampering and Judicial Deception ………………………………..… p.22

D. Abuse of Process and Strategic Legal Harassment ……………….……… p.23

E. Institutional Self-Protection and Civil Rights Suppression ……………..…… p.23

F. Second Amendment Violation and Retaliatory Gun Seizure ……………... p.23

G: Harm Incurred: ..……………………………………………………....………p.24

## IV. PERSONAL AND PSYCHOLOGICAL HARMS

**CLAIM 8: Defamation, Libel & Coordinated Smear Campaign** ……………….. p.25

A. False Statements and Publication …………………………………………… p.25

B. Intent and Malice ……………………………………………………....…… p.26

C. Harm Incurred: ……………………………………………………..…… p.26

**CLAIM 9: Retaliatory Use of Therapy and Mental Health Manipulation** ……... p.27

A. Key Actors and Misconduct: …………………………………….…..……….. p.27

B. Harm Incurred: ………………………………………………..…..…… p.28

**CLAIM 10: Intentional Infliction of Emotional Distress** ……………………….. p.28

A. Coordinated Harmful Conduct by Defendants ……………………………… p.28

B. Harm Incurred: ………………………………………………….…..…… p.29

Case No. 1:25-cv-00717-LTB-RTG    Document 34-4    filed 04/11/25    USDC Colorado
pg 3 of 39

Gladstone v. Summit County et. al.,    INDEX - D. STATEMENT OF CLAIMS    Page iii of iii
1:25cv00717-RTG    (*Supporting Facts*:)

# V. CHILD RIGHTS & CUSTODY VIOLATIONS

**CLAIM 11: State-Enabled Child Abuse, Negligence and Exploitation** ………... p.29

    A. Negligent Supervision and Failure to Protect ……………….………..... p.30

    B. Coordinated Psychological Harm and Exploitation Through Therapy ……. p.30

    C. Harm Incurred: …………………………………………………..… p.31

**CLAIM 12: Parental Rights Interference and Obstruction of Court Orders** ….. p.31

    A. School and Agency Interference with Custody Orders ……………..…. p.31

    B. Entrapment and Obstruction by Law Enforcement and Therapists ……..… p.33

    C. Harm Incurred: …………………………………………….…...…. p.33

# VI - COORDINATED REAL-ESTATE FRUAD

**CLAIM 13: Property Fraud and Unjust Enrichment** ………………….……… P.33

    A. Fraudulent Ownership Through Misrepresentation ……………..…..… p.33

    B. Judicial Complicity in Real-Estate Fraud ………………………….. p.34

    C. Harm Incurred: ……………………………………………….…. p.34

# VII. FEDERAL SECURITIES VIOLATIONS

**CLAIM 14: Unlawful Surveillance & Securities Violations** ………………… p.34

    A. 5th District DA Intrusion into SEC/DORA Securities Computer…………. p.35

    B. Harm Incurred: ……………………………………..……….……… p.36

# "D. STATEMENT OF CLAIMS"
## (1:25cv00717- RTG)

## I. CORE ENTERPRISE & CIVIL RIGHTS VIOLATIONS

**CLAIM 1: Civil RICO –** (18 U.S.C. §§ 1961–1964)

**A. Enterprise Description**

Plaintiff, Stephen Theodore Gladstone, *Sui Juris, In Propria Persona*, brings this action under the **Racketeer Influenced and Corrupt Organizations Act (RICO)** based on a sustained and coordinated campaign of retaliation, fraud, coercion, and obstruction carried out by members of a local Summit County enterprise consisting of municipal actors, law enforcement, court officers, therapists, school officials, and nonprofit affiliates.

Defendants (D1–D57), acting in concert as an association-in-fact enterprise under 18 U.S.C. § 1961(4), engaged in a pattern of racketeering activity to deprive Plaintiff of his constitutional rights, parental relationship, property, reputation, and bodily integrity.

This enterprise operated across government, legal, therapeutic, and educational domains, bound by a common goal of silencing Plaintiff's protected whistleblowing disclosures on IHC child trafficking, Covid-19 vaccine harm, and fraternal discrimination.

This Court is respectfully referred to Plaintiff's Original March 5th, 2025, 42 U.S.C. § 1983 Civil Rights Complaint, it's supporting Exhibits for detailed facts, and all allegations fully stated which are incorporated herein by reference pursuant to Fed. R. Civ. P. 10(c).

**1**

**B. Pattern of Racketeering Activity**

The enterprise engaged in repeated acts constituting racketeering under 18 U.S.C. § 1961(1), including but not limited to:

1. Violation of Civil Rights (42 U.S.C. § 1983)
2. Obstruction of justice and tampering and evidence (18 U.S.C. §§ 1503, 1512);
3. Destruction and falsification of public records (18 U.S.C. § 1515, 1519);
4. Mail, wire fraud and electronic interference (18 U.S.C. §§ 1341, 1343);
5. Computer Fraud and Abuse Act (18 U.S.C. § 1030)
6. Retaliation against a whistleblower (18 U.S.C. § 1513);
7. Extortion under color of official right (18 U.S.C. § 1951);
8. Conspiracy to deprivation of civil rights (42 U.S.C. § 241, 242,1985(3));
9. Use of mental health and nonprofit systems to defame, isolate, or discredit Plaintiff.

**This pattern included:**
  ➢ Destruction and concealment of exculpatory evidence;
  ➢ Manipulation of court filings, transcripts, evidence, and records;
  ➢ False arrests, pretextual charges, and coercive plea tactics;
  ➢ Unlawful digital intrusion and tampering;
  ➢ Insertion of defamatory and misleading documents into the court record;
  ➢ Disruption of parenting time and obstruction of visitation through retaliatory and harmful therapeutic orders;
  ➢ Public harassment, including an assault at Agape Outpost Church during distribution of COVID -19 safety information and Frisco Bay Marina;
  ➢ Psychological harassment by Summit County's SMART team;
  ➢ Lethal intimidation by Summit County's SWAT
  ➢ False arrest and imprisonment to include poisoning and attempt on his life.
  ➢ Collusive behavior among law enforcement, judges, therapists, educators, and nonprofits to retaliate against Plaintiff for protected whistleblower activity.
  ➢ Emotional manipulation of his child causing irreparable psychological harm.

1    **C. Retaliation Against a Reporting Witness -** (18 U.S.C. § 1512 – Civil Analogue)

2    From *2010 to the present* Summit County Defendants (D1-D57) knowingly

3    conspired to retaliate against Plaintiff through coercive and deceptive tactics, defamation,

4    fraud, entrapment, targeted arrests, custody court, excessive evaluations, and weaponized

5    therapy, designed to silence Plaintiff and prevent institutional exposure to liability.

6    This pattern of retaliation against a victim and reporting witness violates both state

7    and federal whistleblower protections, constitutional protections, and constitutes overt

8    malicious acts in furtherance of a racketeering enterprise operating under color of law.

9    **D. Systemic Custom and Policy of Abuse**

10   The repeated constitutional violations described herein, including denial of due

11   process, religious discrimination, obstruction of justice, malicious prosecution, and

12   retaliation for protected speech, demonstrate not isolated misconduct, but a deeply

13   entrenched institutional coordinated pattern of civil rights violations. These acts were

14   tolerated, encouraged, and reinforced by agencies within Summit County, including the

15   judiciary, law enforcement, school system, and publicly funded mental health providers.

16   **E. Specific Acts Included:**

17   **1.** *2010-2013* Attempted murder of plaintiff resulting in the death of his dog due to

18   willful targeting with black mold and radon in house rented at 106 Gold Flake

19   Terrace from (Tod Davis D55). The *3-13-2025* (**EXHIBIT-G:** Davis to RTG #13).

is a perfect display of paranoid guilt, masonic libel, and validation that since *2010* the Plaintiff has been a target of Freemasons colluding with law enforcement (FOP).

**2.** *2013* (PBD D2) Detective (Cullver D17) conducted a SWAT raid on Plaintiff's home after he discussed IHC child trafficking in public. No investigation followed.

**3.** *May 12, 2012* – False arrest, assault and battery, and false imprisonment carried out by law enforcement Defendants (D1, D2, D3, D7, D16), absent probable cause.

**4.** *Oct–Dec 2015* – Attempted murder and infanticide while Plaintiff lived with his newborn in an apartment owned by (Ellice Goldberg D55). The unit had intentional exposure to carbon monoxide, black mold, harmful toxins, and faulty wiring.

**5.** *August 1, 2016* – Dental sabotage by (Thomas Lasacco D53), who surgically implanted a weaponized molar later triggered electronically by Summit County Sheriff (D7) around *May 13, 2022*, resulting in acute pain while in custody. The entry of Sharuzi Law is a telling sign that "acci***dental***" death is a common practice.

**6.** In *October 2020* – After Plaintiff reported IHC child trafficking, LPL financial fraud, Covid-19 dangers, attempted murders, and masonic discrimination to 5th District DA's (Brown  D27, Hunt D28, McCollum D30) via email, telephone, and registered mail on disc and USB. Plaintiff was immediately harassed by SMART officers, (Gutzwiller D12, Brottman D13). No investigation was ever opened. Similar evidence was also presented to DORA Examiners in *2013, 2016* and *2021*.

7. *July 2021 - Present* – U.S. Forest service (Bianchi D24) built 40 burn piles in heavy forest 400 yards below Plaintiff's home with only one road in or out. Reported to the sheriff (Fitzsimmons D7), town officials (D1, D2), U.S. Forest service, RWB Fire Dept. (Nelson D33), to this day this life-threatening harassing hazard remains.

8. *August 25, 2021* – Plaintiff and his child were verbally assaulted aboard a Frisco Bay Marina shuttle boat. This bias-motived premeditated attack was proceeded by price gouging, the sinking of his sailboat, and other discriminatory acts.

9. *August 29, 2021* – Plaintiff and his child were assaulted by an angry mob of 20 men at their church Agape Outpost for offering free Covid-19 information.

10. *May 9, 2022* – Plaintiff reported attempted murder via fiberglass exposure. Sheriff (FitzSimons D7) and Breckenridge PD Chief (Baird D16) authorized a SMART harassment and a SWAT raid of Plaintiff's home, executed without probable cause by law enforcement Defendants (D8, D9, D10, D11, D13, D14), in retaliation for whistleblowing on Covid-19, IHC child trafficking, and masonic discrimination.

11. *May 9–12, 2022* – Sheriffs (Shilling D8) and (Scalise D9) harassed Plaintiff's out-of-state family to secure an EPRO, bribed and coerced the child's (mother D37) to withhold the child, fabricated charges, and arrested Plaintiff without a warrant.

12. ***March 14th to April 9th, 2025***, personal computer intrusion, theft, and document destruction by 5th District DA (Crisera D31), violating Federal SEC securities laws.

13. Additional incidents of RICO provided in *March 5, 2025* Compliant and Evidence.

**F. Harm Incurred:**

As a direct and proximate result of this criminal enterprise, Plaintiff suffered:

- ➢ Loss of parental rights, visitation and all communication;
- ➢ Reputational destruction and professional hardship;
- ➢ Emotional trauma, physical harm and irreparable damage to father-son relationship;
- ➢ Thousands of hours of lost productivity.
- ➢ Retaliatory prosecution and coerced pleas;
- ➢ Destruction and manipulation of court records
- ➢ Theft, destruction and manipulation of Plaintiff's computer records;
- ➢ Denial of access to a fair tribunal and lawful remedies;
- ➢ Ongoing threat of property interference through judicial, legal abuse and fraud;
- ➢ Psychological deterioration and emotional regression of Plaintiff's minor child;
- ➢ Systemic revocation of constitutional rights and statutory protections.
- ➢ Loss of influence, education, and enjoyment during child's informative years 7-10.

**CLAIM 2: Conspiracy to Interfere with Civil Rights and Equal Protection -** (42 U.S.C. § 1985(2) & (3); Fourteenth Amendment)

**A. Coordinated Civil Rights Conspiracy**

Plaintiff brings this claim under 42 U.S.C. § 1985(2) & (3) against law enforcement, judicial officers, prosecutors, therapists, school officials, and court-appointed professionals for conspiring to obstruct justice, suppress speech, and deprive Plaintiff of constitutional rights. Defendants acted in concert to silence, discredit, and dismantle Plaintiff's legal, parental, and social standing through unlawful means. **The scheme included:**

- ➢ SMART harassment, SWAT intimidation and false arrest;
- ➢ Suppression and destruction of exculpatory evidence and filings;
- ➢ Censorship of Plaintiff's social media and private website;
- ➢ Electronic surveillance and tampering with Plaintiff's personal devices;

1    ➢ False mental health and erratic behavior narratives to discredit Plaintiff;
2    ➢ Tampering with appellate records, evidence, and court transcripts;
3    ➢ Defamatory communication to schools, therapists, and the public;
4    ➢ Denial of due process and court access following whistleblower disclosures;

5

6    This pattern of conduct meets the elements of a civil conspiracy under § 1985(2) & (3),

7    as Defendants shared a common goal to injure Plaintiff by obstructing justice and depriving

8    him of equal protection under the law.

9    **B. Malicious Prosecution and Abuse of Process**

10    Defendants engaged in malicious prosecution and abuse of legal process, initiating

11    false charges and civil actions without probable cause, including harassment, obstruction,

12    fabricated EPRO, and restraining orders, following Plaintiff's protected activity.

13    From *May 19th 2022 to present* Defendants fabricated allegations, suppressed

14    evidence, denied Plaintiff the right to a probable cause or motions hearings, sequestered

15    courtrooms, and manipulated criminal and custody proceedings as retaliatory tools to

16    silence and discredit him. These actions served no legitimate purpose other than to punish

17    Plaintiff for whistleblowing on IHC child trafficking, masonic discrimination, Covid-19

18    dangers, and more, while leveraging his innocent young child causing irreparable harm.

19    The abuse of state power caused reputational and financial harm, emotional trauma,

20    and harmful restrictions on Plaintiff-Father's parental rights.

21    **C. Denial of Equal Protection**

1    Defendants' actions also constituted a systemic violation of the Equal Protection

2    Clause of the Fourteenth Amendment. State and county actors—including judges, school

3    staff, and mental health professionals, treated Plaintiff disparately based on:

4    ➢ His spiritual beliefs;
5    ➢ His protected whistleblowing activity and free speech.
6    ➢ His right to express grievances against the government.

7

8    Despite credible evidence of maternal child abuse and alienation, Plaintiff was

9    subjected to excessive scrutiny, punitive therapy, and excessive evaluations, while the

10   mother was shielded from accountability. Therapists mischaracterized Plaintiff's faith and

11   beliefs as instability while excusing or ignoring far more serious conduct by the mother.

12   School officials spread false claims based on gender stereotypes and religious

13   prejudice. The disparate treatment Plaintiff-Father endured was not incidental, it was part

14   of a systemic pattern of discrimination by government actors acting under color of law.

15   **D. Harm Incurred:**
16   As a direct result of this conspiracy and denial of equal protection, Plaintiff suffered:
17   ➢ False arrest and criminal charges;
18   ➢ Denial of procedural due process and judicial safeguards;
19   ➢ Emotional trauma and reputational injury;
20   ➢ Permanent impairment of parental rights;
21   ➢ Severe psychological, development, and social damage to his young child;
22   ➢ Financial losses, court-imposed sanctions, and retaliatory legal burdens.

23

24   **CLAIM 3: Retaliation, Judicial Obstruction, and Denial of a Fair Tribunal -** (15
25   U.S.C. § 78u-6; First & Fourteenth Amendments; Whistleblower Protection Acts)
26
27   **A. Whistleblower Retaliation Under Federal and State Law**

**8**

1    Plaintiff, a licensed financial professional and federally protected whistleblower,

2    brings this claim under 15 U.S.C. § 78u-6, the First Amendment, Dodd-Frank Act,

3    Sarbanes-Oxley Act, and Colorado Whistleblower Protection Act, C.R.S. § 24-50.5-103.

4    Despite these protections, prosecutors (Brown D27, Hunt D28, Cava D30,

5    McCollum D30, Potts D32), SMART officers (Shilling D8, Brottman D13, Pilodori D14,

6    Gutzwiller D12), (Fitzsimmons D7, Baird D16, Scalise D9, Bohlender  D10, Hall D11,

7    Spencer D15, Cullver D17, Sloan D18, AtkinsD19, Dearth D20, Chavez D21, Wickman

8    D22, Vail D23) and judicial officials (Romeo D4, Owens D5, Hershberger D6, Beck D35,

9    Tarrin D34, Rabin D36) escalated retaliatory actions through:

10    ➤ Harassing with SMART & SWAT rather than investigate criminal complaints
11    ➤ Failure to investigate credible criminal complaints including attempted murders.
12    ➤ Filing false criminal charges absent probable cause
13    ➤ False arrest and coerced plea deals;
14    ➤ Verbal and writing perjury in testimony and reports
15    ➤ Masonic harassment, poisoning and life-threatening actions in custody.
16    ➤ Public defamation and manufactured mental health narratives;
17    ➤ Suppression of filings and exculpatory evidence;
18    ➤ Censorship of protected speech including collusion with social media;
19    ➤ Illegal electronic surveillance and invasion of privacy;
20    ➤ Interference with property and parental rights.
21    ➤ Surveillance, character assassination, and procedural exclusion;
22    ➤ Deletion of whistleblower evidence from the court record;
23    ➤ Misuse of evaluation and therapy to undermine Plaintiff's credibility;
24    ➤ Removal of ALL parental rights absent "Clear and Convincing" evidence.
25    ➤ Ignoring or permitting acts of physical violence agsint Plaintiff and child, including
26    DV and child abuse by the mother (Wehner D37) on *August 18th, 2019.*

**9**

➢ Emotional manipulation of his child causing irreparable harm and damage relations.

These actions were not isolated but part of a coordinated to silence Plaintiff's disclosures and retaliate against him for reporting on matters of significant public concern.

## B. Denial of Access to the Courts

Defendants further violated Plaintiff's First and Fourteenth Amendment rights by obstructing his right to a complete appeal record and obtain meaningful review through the judicial system. Specific acts of obstruction included:

➢ Deletion of filings and exhibits submitted by Plaintiff;
➢ Judge (Owens D5) Denial of over 40 motions without written explanation;
➢ Suppression of Plaintiff's Motion to Dismiss for Malicious Prosecution and associated exhibits proving official retaliation and Plaintiff's innocence;
➢ Failure to transmit the complete appellate record to the Colorado Court of Appeals;
➢ Refusal by the Colorado Supreme Court to review constitutional claims in Writ of Certiorari or even enforce statutory and constitutional law in Writ of Mandamus.
➢ U.S. District Court's denial of Injunctions to protect the child requiring Amendment.
➢ 10th Circuit Court's denial of Mandamus on jurisdiction, disregarding 139 court fillings proving collusion between the COA and 5th District to corrupt appeals.
➢ Colorado Senate Judiciary Committee and (Dylan Roberts) non-response to Legal Public Notice and *March 31, 2025*, filibuster to suppress Plaintiff's right to be heard.

These acts, committed by legislatures, judges, court clerks, and higher appellate courts, resulted in a systemic denial of legal remedy and an institutional cover-up of misconduct involving judicial actors and government agencies, causing harm to a child.

## C. Violation of the Right to a Fair and Impartial Tribunal

1    Plaintiff was further deprived of his constitutional right to a neutral and unbiased

2    tribunal. Judges (Romeo D4) and (Owens D5) demonstrated consistent prejudice, malice,

3    disregard for evidence, and overt alignment with state actors. Examples include:

4    ➤ Dismissing critical motions, including requests for due process and enforcement of
5    orders, without substantive review;
6    ➤ Refusing to acknowledge or enforce favorable mental health evaluations;
7    ➤ Mischaracterizing valid legal motions as "*torts*" to avoid adjudication;
8    ➤ Lying on the record about the presence of filings that had in fact been deleted;
9    ➤ Facilitating a one-sided custody process devoid of constitutional safeguards;
10   ➤ Leveraging a child through weaponized therapy causing irreparable harm;
11   ➤ Shielding and coordinating government bad actors in retaliation against Plaintiff.

12

13   Appellate courts compounded the harm by ignoring omissions in the record,

14   denying motions for correction, and rejecting writ and mandamus petitions without

15   explanation, leaving Plaintiff without redress despite extensive documentation of judicial,

16   bias, procedural irregularities, and constitutional violations.

17   **D. Harm Incurred:**

18   As a direct and foreseeable result of this coordinated retaliation and denial of

19   judicial access, Plaintiff suffered:

20   ➤ Denied access to the courts and fair impartial appellate reviews;
21   ➤ Censorship of protected disclosures and First Amendment retaliation;
22   ➤ False arrest, coerced plea bargain, and reputational destruction;
23   ➤ Systematic obstruction of filings and judicial oversight;
24   ➤ Emotional trauma, financial hardship, and legal disenfranchisement;
25   ➤ Ongoing harm to Plaintiff's child due to unjustified parental separation and the
26   denial of a safe paternal bond.
27   ➤ Total loss of all parental rights, visitation, and communication.

**CLAIM 4: Religious Discrimination and Ideological Targeting -** (First & Fourteenth Amendments; Title VI; Title IX; 42 U.S.C. § 1983)

**A. Targeting of Plaintiff's Faith and Moral Beliefs**

Plaintiff brings this claim under the First and Fourteenth Amendments, Title VI, and Title IX, and 42 U.S.C. § 1983 against therapists, school officials, legal counsel, court-appointed professionals, and judicial officers who discriminated against him based on his Godly faith, spiritual worldview, and constitutionally protected moral advocacy.

Plaintiff is a spiritual person with a deeply held belief in God, truth, and moral responsibility. His expressions regarding child safety, institutional corruption, and systemic abuse, including concerns about undue fraternal influence and government misconduct, arise from sincere spiritual convictions. These beliefs were repeatedly cited by Defendants as evidence of delusion, mental instability, or extremism.

Defendants, including therapists (McCoy D50, Taylor D51, Landrum D52, Mahler D53), court officers (Tarrin D34, Beck D35), legal agents (Rabin D36), and judges (Romeo D4, Owens D5), engaged in coordinated acts of religious discrimination and ideological persecution by:

➢ Pathologizing Plaintiff's beliefs and using them to justify mandatory therapy, custody restrictions, and excessive evaluations;
➢ Labeling evidence-based concerns about corruption and child safety as delusional;
➢ Refusing to investigate threats or violence directed at Plaintiff and his young son;
➢ Systematically excluding Plaintiff from his child's life absent evidence of unfitness, while reinforcing harmful stereotypes and false narratives about Plaintiff's beliefs;
➢ Mischaracterizing events and evidence thus "*Gaslighting*" Plaintiff .

1  ➢ Using protected religious and moral expression as a pretext to remove parenting
2     rights, defame, and isolate Plaintiff from his child and community.

3

4     This conduct violated Plaintiff's rights under the Free Exercise Clause, the

5  Establishment Clause, and the Equal Protection Clause of the U.S. Constitution.

6  **B. Educational Discrimination and Gender Bias under Title IX**

7     Defendants at Breckenridge Elementary, including administrators, counselors,

8  teachers, and staff discriminatingly interrogated Plaintiff's child daily, engaging in gender

9  and religious discrimination against his father under Title IX by reinforcing harmful

10  stereotypes and marginalizing Plaintiff based on his identity and protected beliefs.

11     Despite court orders supporting Plaintiff's rights, school staff, including

12  (Westerhoff D39, Wallace-Seman D40, Fossett D41, Lachance D4, Knickerhem D43,

13  Butterworth D44, Rockefeller D45) excluded Plaintiff-Father from decision-making

14  processes, failed to communicate critical educational information, and empowered the

15  mother to act unilaterally, while colluding with the mother in emotional manipulation of

16  the child, inducing fear to alienate him from Plaintiff. Reports and internal communications

17  reflect collusion and stereotypical assumptions that framed Plaintiff's fatherhood and

18  protective instincts as threatening, while shielding and aiding in maternal abuse.

19     This malicious behavior contributed to Plaintiff's parental alienation, reputational

20  harm and his child's psychological ailments and arrested emotional development.

21  **C. Abuse of Therapeutic Authority to Suppress Identity and Belief**

**13**

1    Therapists affiliated with Building Hope (Kellyn D47) and Mile High Behavioral

2    Health (Courtney D48) exploited their professional authority to suppress Plaintiff's

3    religious identity and moral advocacy. These providers inserted defamatory references into

4    clinical reports, falsely equated moral conscience with delusion, and treated Plaintiff's

5    concerns about child trafficking, Covid-19, and discrimination as psychiatric concerns.

6    Rather than providing objective care or facilitating reintegration with his child, these

7    actors used therapeutic authority as a tool of censorship, effectively denying Plaintiff his

8    First Amendment rights and exacerbating emotional harm to both father and son.

9    **D. Religious Discrimination and Violence in Community Spaces**

10    On *August 25th, 2021*, Plaintiff and his son were racially targeted on a Frisco Bay

11    Marina shuttle boat for divulging the Zionist perpetrators the Covid-19 graphene vaccine.

12    Covid-19, IHC child trafficking, and murder attempts in Breckenridge by (Davis D55) and

13    (Goldberg D56) were reported to (Frisco D3) PD chief (Wickman D22) in possession of

14    Plaintiff's custom *www.NoVax.Life* USB evidence, and detective (Vail D23) in a two-hour

15    conversation, but FPD refused to file a Bias-Motivated Complaint and suppressed the call.

16    Breckenridge (D2) PD chief (Baird D16) received the *NoVax.Life* evidence twice in 2021.

17    On *August 29th, 2021*, Plaintiff and his son were targeted at Agape Outpost (D57),

18    a local church, during peaceful outreach, after offering USB drives containing COVID-19

19    and RICO related concerns. Plaintiff was physically separated from his six-year-old son

20    and assaulted twice. No church leaders intervened. No law enforcement investigated.

This traumatic event, and its mischaracterization by school, court, and therapy personnel, further illustrates the institutional hostility toward Plaintiff's beliefs and underscores the coordinated nature of the religious and ideological suppression he faced.

**E. Harm Incurred:**

As a direct result of the Defendants' discrimination and targeting, Plaintiff suffered:

➢ Loss of parental rights and family integrity;

➢ Public stigmatization of faith, duty to public safety, and morality as delusion;

➢ Discrimination from schools, courts, and therapeutic professionals;

➢ Emotional trauma, reputational injury, and parental alienation;

➢ Continuing housing and living duress due to Aspen Aly burn piles [D24, D33];

➢ Life threats by arsenic, fiberglass, magnesium chloride, SWAT, and acci*dental.*

➢ Attempted psychological conditioning of Plaintiff's child to reject his father;

➢ Severe detriment to Plaintiff's child's academic and professional development.

# II. GOVERNMENT LIABILITY & PATTERN CLAIMS

**CLAIM 5: Monell Liability – Unconstitutional Policies, Customs, and Failures**

(42 U.S.C. § 1983; *Monell v. Dept. of Social Services*, 436 U.S. 658)

**A. Policies and Customs Leading to Civil Rights Violations**

Plaintiff brings this claim under 42 U.S.C. § 1983 against Summit County (D1), the Town of Breckenridge (D2), Town of Frisco (D3), affiliated agencies, and municipal entities including the Sheriff's Office, District Attorney's Office, SMART, Building Hope, MHBHC, Summit School District, and the Fraternal Order of Police. These Defendants are liable under Monell for maintaining and enforcing unconstitutional policies, customs, and practices that directly caused violations of Plaintiff's constitutional rights.

1    Between *2010 and present* Summit County and its sub-entities operated under

2    established policies and tolerated widespread customs that resulted in:

3    ➢ Retaliation for protected whistleblower activity;

4    ➢ False arrest, coerced plea bargaining, and malicious prosecution;

5    ➢ Suppression of exculpatory evidence and filings;

6    ➢ Court-enforced therapy mandates through biased, monopolized providers (e.g.,

7    Building Hope and MHBHC);

8    ➢ Educational exclusion and systemic erasure of Plaintiff's parental role;

9    ➢ Discrimination on the basis of sex, religion, and viewpoint;

10    ➢ Institutional protection of maternal abuse and coordinated defamation of the father.

11

12    These practices were not isolated, accidental, or aberrational, they reflected policies

13    or long-standing inaction despite repeated notice of constitutional violations.

14    **B. Failure to Train, Supervise, and Intervene**

15    Despite ongoing complaints, credible reports, and visible patterns of abuse, Summit

16    County and its affiliated agencies demonstrated deliberate indifference by:

17    ➢ Failing to train SMART officers, therapists, and court officials on constitutional

18    boundaries;

19    ➢ Failing to supervise or discipline employees and contractors engaged in repeated

20    misconduct;

21    ➢ Ignoring credible claims of civil rights violations, religious discrimination, and

22    evidence tampering;

23    ➢ Refusing to investigate or intervene even as harm to Plaintiff and his child escalated.

24

1    This institutional failure enabled widespread abuse of power, targeting of protected

2    speech, and procedural manipulation across multiple departments, including the judiciary,

3    schools, law enforcement, and mental health systems.

4    **C. Institutional Endorsement of Fraternal Discrimination**

5    Municipal liability also extends to entanglement with the Fraternal Order of Police

6    (FOP) and other private or semi-public entities that were empowered to act with state

7    authority. Summit County, the Town of Breckenridge and the Town of Frisco failed to

8    protect Plaintiff and his child from FOP, Masonic, and Zionist affiliated actors, and allowed

9    retaliatory violence, community harassment, and defamation under the color of law.

10   These policies and failures combined to inflict long-term and compounding harm to

11   Plaintiff's rights, reputation, business, and family reflecting an entrenched culture of

12   impunity and selective enforcement driven by political and ideological bias.

13   **D. Harm Incurred:**

14   As a result of these unconstitutional policies and supervisory failures, Plaintiff suffered:

15   ➢ Loss of parental rights and family integrity;
16   ➢ Retaliatory prosecution and state-sanctioned psychological abuse;
17   ➢ Reputational damage and public defamation;
18   ➢ Financial ruin, housing interference, and community ostracization;
19   ➢ Emotional trauma and ongoing psychological harm to Plaintiff and his child.

20

21   **III. FRAUD, OBSTRUCTION, AND DUE PROCESS VIOLATIONS**
22   (State Law; 42 U.S.C. § 1983 – Misconduct, Malpractice, and Deprivation of Rights)
23

24   **CLAIM 6: Fraud, Perjury, and Misconduct by Officials and Providers**

**A. Pattern of Fraud and Misrepresentation to Influence Judicial Outcomes**

Plaintiff brings this claim under Colorado state law and federal civil rights statutes against a group of licensed professionals, including court-appointed officers and mental health providers, who knowingly submitted false statements, omitted material facts, and manipulated clinical and legal reports for the express purpose of depriving Plaintiff of his constitutional rights and obstructing his parental relationship between *2023 and present*.

**Defendants include:**

1. **Ashleigh Beck (D35) - CFI**
2. **Kristin Tarrin (D34) - CLR**
3. **Ciara McCoy (D50), Gemma Taylor (D51), Laura Landrum (D52), and Jeffery Mahler (D53) - Building Hope Therapists & Summit School District Counselors**
4. **Kellyn Ender (D47) Building Hope Supervisor**
5. **Jessica Courtney (D49) Supervisor Mile High Behavioral Health Care (D48)**

These individuals engaged in a deliberate and coordinated campaign of deception by:

➢ Suppressing exculpatory evidence, including five favorable mental health evaluations of Plaintiff;
➢ Emotional manipulation and trauma-based reprograming of Plaintiff's young child;
➢ Mischaracterizing Plaintiff's mental and emotional state without clinical basis or direct observation;
➢ Falsifying or omitting evidence of maternal abuse and parental alienation;
➢ Fabricating claims of violence: e.g., false strangulation allegation by (Tarrin D34);
➢ Misusing hearsay, inserting bias, and intentionally distorting therapeutic narratives;
➢ Sharing confidential or privileged information in violation of ethics and HIPAA.

**B. Collusion and Coordinated Professional Misconduct**

Rather than serving the court as neutral experts, these professionals acted in concert with state and legal actors to advance a false narrative aimed at discrediting Plaintiff, severing the father-son relationship, and supporting predetermined custody outcomes.

**Specific acts included:**

1. CFI (Beck D35) relying on hearsay and prejudice to portray Plaintiff as unstable directly violation First Amendment rights.
2. CLR (Tarrin D34) orchestrating obstruction of parenting orders, adjudicating, and circulating defamatory abuse allegations to school officials harming the child.
3. (Taylor D51) perjury, trauma reprograming, emotional manipulation, injecting unsupported bias into reports, and refusing to observe father-son interaction.
4. (McCoy D50) perjury, trauma reprograming, emotional manipulation, intentionally triggering trauma and fear in the child then falsely blaming Plaintiff-Father.
5. (Landrum D52) emotional manipulation and withholding Plaintiff's child against his will, injecting unsupported bias into reports violating Federal HIPPA laws by publishing and distribution privileged information, which was weaponized in court.
6. (Mahler D53) intentionally triggering age regression assigning trauma to Plaintiff, and non-consensual hypnosis of the child falsely attribution to Plaintiff-Father.

These individuals acted with actual malice, premeditated intent to undermine the father-son relationship, professional negligence, and willful disregard for the ethical standards governing mental health providers and court-appointed experts.

**C. Consequences of Deception and Malpractice**

As a direct result of this orchestrated misconduct:

➢ Plaintiff-Father was portrayed falsely as mentally unstable and dangerous;
➢ His parental rights were eliminated based on manipulated clinical reports;
➢ His reputation was irreparably harmed within the community and broader public;

➢ His son suffered severe psychological deterioration, including age regression**,** PTSD**,** anxiety, adjustment disorder, trauma-based memory repression, arrested development, and somatic conditions (e.g., eczema), resulting from therapeutic sabotage, institutional betrayal, parental alienation, and moral cruelty to a child.

➢ Plaintiff endured emotional devastation, reputational ruin, and the loss of a meaningful role in his son's life in his developmental years from age 7 to 10.

➢ Child endured loss of personal confidence, social status, and academic detriment.

## D. Harm Incurred:

The fraudulent reports, perjured statements, and negligent supervision caused:

➢ Permanent damage to Plaintiff's public and professional credibility;

➢ Emotional and psychological trauma to Plaintiff and his child;

➢ Unjust judicial outcomes based on false clinical representations;

➢ Erosion of trust in therapeutic and judicial systems;

➢ Ongoing harm due to institutional reliance on manipulated findings;

## CLAIM 7: Fraud on the Court, Evidence Suppression, & Obstruction of Justice - (42 U.S.C. § 1983; Brady v. Maryland; DPPA 2020; Federal & State Law)

### A. Overview of Judicial and Prosecutorial Misconduct

Plaintiff brings this claim against judges, prosecutors, clerks, and affiliated officials within the 5th Judicial District of Colorado for a systematic campaign of obstruction, fraud on the court, and suppression of exculpatory evidence, executed to retaliate against Plaintiff for whistleblower disclosures and to shield government misconduct from scrutiny.

Defendants including Judges (Romeo D4, Owens D5), Clerk (Hershberger D6), District Attorneys (Brown D27, Hunt D28, Cava D29, McCullough D30, Crisera D31, and Potts D32) law enforcement officers (Fitzsimons D7, Shilling D8, Scalise D9, Bohlender D10,

1  Hall D11,  Gutzwiller D12, Brottman D13, Pilodori D14, Spencer D15, Baird D16, Cullver

2  D17, Sloan D18, Atkins D19, Dearth D20, Chavez D21, Wickman D22, Vail D23 )

3  engaged in deliberate misconduct between *2010 to present* through:

4  ➢ Destruction, deletion, or refusal to transmit critical filings including Plaintiff's
5  Motion to Dismiss for Malicious Prosecution and all attached *Brady* evidence);
6  ➢ SMART harassment and lethal SWAT intimidation
7  ➢ Endangerment, Indifference, Deprivation of Rights, State-Created Danger.
8  ➢ Withholding of body cam footage, jail surveillance, psychological reports, and
9  whistleblower documentation.
10  ➢ Falsifying the appellate record while inserting irrelevant or stigmatizing material;
11  ➢ Tampering with Plaintiff's computers, cameras and electronic devices;
12  ➢ Tampering with incident reports, dispatch reports, public defender assignment,
13  transcript docketing, and disruptive court filings minutes before parenting-time;
14  ➢ Misrepresenting the existence of filings and ignoring emergency motions to deny
15  Plaintiff access to a full and impartial review by higher courts.
16  ➢ False arrest, battery, and imprisonment.

17

18  **B. Intentional Suppression of Exculpatory Evidence and Brady Violations**

19  Defendants knowingly withheld evidence that was clearly material to Plaintiff's

20  defense and protected speech. Suppressed items include:

21  ➢ USB drives and Discs documenting fraud and whistleblower disclosures;
22  ➢ Body cam footage showing the coercion of the child's mother, provocation of
23  Plaintiff's and lack of probable cause;
24  ➢ Jail surveillance confirming Plaintiff's statements and disproving police claims;
25  ➢ Withholding jail's worn copy of "*Yukon Alone*" a published masonic numeric cypher
26  proving Plaintiff's allegations and Fraternal Order of Police retaliation.
27  ➢ Five favorable mental health evaluations, hundreds of positive therapy sessions, and
28  Dr. Rice's consistent criticism of court therapy orders and Building Hope therapists.

**21**

➢ Recordings, emails, and exhibits confirming fabrication of fear or harm in child, systemic bias, procedural violations, maternal abuse, and Plaintiff's parental fitness.

➢ Collusion with Social-Media to shadow-ban and obstruct of Plaintiff's websites.

Despite formal requests, motions to compel, and appellate review, these materials were ignored, hidden, or destroyed—violating the *Brady* doctrine, the Due Process Protection Act, and Plaintiff's constitutional right to defend himself and seek redress.

## C. Record Tampering and Judicial Deception

Judges Owens and Romeo not only failed to correct the record but actively participated in tampering and severe abuse of discretion to deceive:

1. Judge (Owens D5) falsely stated Plaintiff's MTD had been filed "*in the other case*" and dismissed over 40 filings without substantive review or explanation;

2. Judge (Romeo D4) biasedly re-categorized the constitutional the Motion to Dismiss for Malicious Prosecution as a "*tort*" to evade review, disparaged plaintiff's sound mind after a favorable evaluation by Dr. Lawrence PhD. to withhold his child, and is actively attempting to deny a granted jury trial on plaintiff's home for fraud.

3. Clerk (Hershberger D6) manipulated appeal records omitting documents, evidence, and hearing transcripts, while inserting defamatory filings. The Court of Appeals included **Exhibit 23**, which concerns (Mahler's D53) non-consensual hypnosis of the child, to discredit the Plaintiff, or as numeric coded signaling in court filings.

4. In *January 2025* the 5th District court colluded with Civil Communicator (D46) to directly tamper with parental communications to obstruct court ordered visitation.

5. Deputy district attorney Lauren Crisera (D31) committed multiple felonies illegally accessing Plaintiff's G.F. financial system from a 5th District Court server.

These acts reflect intentional fraud on the court under Rule 60(d)(3) and deprived Plaintiff of access to a fair hearing and meaningful appellate oversight.

**D. Abuse of Process and Strategic Legal Harassment**

Beyond tampering, Defendants misused court processes to entrap and punish Plaintiff causing irreparable psychological harm to his child including:

➤ Weaponized court orders to provoke and harass Plaintiff with collusive therapists.
➤ Mandating over 150 unnecessary therapy sessions as a pretext for retaliation;
➤ Using biased evaluations and hearsay to fabricate absence of parental fitness;
➤ Timing critical rulings and filings to sabotage parenting time and legal rights;
➤ Orchestrating bifurcated property proceedings to interfere with homeownership;
➤ Obstructing Plaintiff's constitutional right to fair and impartial proceedings.

This pattern of weaponized litigation was designed not to serve justice, but to suppress whistleblowing, destroy credibility, and sever the father-son relationship.

**E. Institutional Self-Protection and Civil Rights Suppression**

At the heart of this obstruction was a coordinated effort to protect Summit County's institutional liability. Defendants suppressed whistleblower materials, forensic evidence, and clinical records that would have exposed:

➤ False charges, arrest and imprisonment, as well as failure to investigate crimes;
➤ Malicious prosecution, *Brady* violations, and abuse of process;
➤ Maternal abuse, coercion, and parental alienation harming the child;
➤ District attorney, law enforcement, educator and therapist coordinated misconduct;
➤ Misuse of court-appointed professionals (e.g., Tarrin and Beck D34 D35);
➤ Systemic therapeutic and educational bias leveraging a child to provoke his father;

Rather than serve justice, Defendants prioritized damage control and reputational shielding, using judicial authority to conceal wrongdoing and retaliate against the Plaintiff.

**F. Second Amendment Violation and Retaliatory Gun Seizure**

In *May 2022* ss a result of a coerced EPRO, false DV charge, and coerced plea, Plaintiff was unlawfully stripped of his Second Amendment rights. The Summit County Sheriff's Office, under Sheriff (Fitzsimmons D7), confiscated Plaintiff's legally owned firearms and ammunition without due process, probable cause, or evidence of violence.

The DV label was fraudulently applied to retaliate against Plaintiff's protected speech and whistleblowing, resulting in an unconstitutional deprivation of his right to keep and bear arms under the Second and Fourteenth Amendments.

These actions violated Plaintiff's rights under *Brady*, the Due Process Protection Act, 42 U.S.C. § 1983, and the First, Fifth, and Fourteenth Amendments, while also constituting fraud on the court under Rule 60(d)(3).

**H: Harm Incurred:**

As a direct and proximate result of this fraudulent obstruction scheme, Plaintiff suffered:

➤ Loss of due process and fair trial rights in both criminal and family proceedings;

➤ Confirmation of a retaliatory conviction and coerced plea absent evidence, resulting from *Brady* violations and evidentiary suppression;

➤ Unconstitutional deprivation of Second Amendment rights and unlawful confiscation of legal firearms;

➤ Severe reputational damage due to manipulated court records and defamatory public filings as well as life-threatening harm in Summit County jail.

➤ Ongoing loss of parenting time and meaningful legal remedies

➤ Emotional devastation and psychological trauma to both Plaintiff and his child.

These acts were not isolated or negligent—they were the product of a deliberate, calculated system of obstruction and legal sabotage.

# IV. PERSONAL AND PSYCHOLOGICAL HARMS

**CLAIM 8: Defamation, Libel & Coordinated Smear Campaign**

Against Therapists, Court Officers, Prosecutors, School Officials, and Private Associates for Knowingly Spreading False Allegations to Destroy Plaintiff's Reputation, Sever His Parental Rights Through Torment and Emotional Manipulation of His Child.

*Between 2021 to present* Defendants, acting both individually and in concert, engaged in a malicious defamation campaign against Plaintiff. This coordinated smear effort spanned multiple institutions and included therapists, legal counsel, court officials, school staff, and private associates who knowingly disseminated false, harmful, and unsubstantiated allegations about Plaintiff's mental health, character, and parenting fitness.

**A. False Statements and Publication**

Defendants publicly and repeatedly asserted that Plaintiff was:

- ➢ Mentally unstable and delusional;
- ➢ A danger to his child and others;
- ➢ Abusive or threatening despite no credible evidence;
- ➢ Unfit to participate in educational, therapeutic, or parental activities.

These defamatory statements were:

- ➢ Disseminated to schools, therapists, court files, and the public;

> Issued without clinical basis or direct observation;
> Contrary to five favorable mental health evaluations;
> Used as justification to impose unjust custody restrictions and social exclusion.

Notable examples include:

1. Ms. Landrum's (D52) unauthorized distribution of a defamatory HIPPA letter;
2. Ms. Taylor's (D51) fabricated clinical reports labeling Plaintiff as harmful and unfit.
3. CLR (Tarrin's D34) and CFI (Beck's D35) defamatory claims embedded in official court reports, based entirely on hearsay;
4. DA (Cava's D29) court arguments portraying Plaintiff as incompetent;
5. Judge (Romeo's D4) judicial language reinforcing stigmatizing allegations as fact;
6. Judge (Owens' D5) defamatory Orders, mischaracterizations and "*gaslighting*".
7. School personnel's repetition of those claims in educational settings and to his child;
8. Attorney (Rabin's D36) false filings perpetuating defamatory narratives alleging fatherly harm while suppressing maternal child abuse, neglect, and alienation.

## B. Intent and Malice

The defamatory conduct was not incidental or based on mistake. These actors acted with:

> Reckless disregard for truth or falsity;
> Motivated intent to destroy Plaintiff's credibility and reputation;
> A shared objective to silence Plaintiff's whistleblowing and sever his paternal bond;
> Strategic repetition across multiple forums to give falsehoods an air of credibility and permanence.

## C. Harm Incurred:

As a direct result of this coordinated defamation campaign, Plaintiff suffered:

1. Permanent damage to his personal and professional reputation;
2. Alienation from his son and erosion of a close loving father and son bond;
3. Exclusion from school, athletics and public events;
4. Emotional distress, social ostracization, and loss of business credibility;

**5.** Ongoing stigma and false public perception shaped by malicious narratives repeated by trusted officials and professionals.

**CLAIM 9: Retaliatory Use of Therapy and Mental Health Manipulation**

Against Judges, Prosecutors, Therapists, and Court-Appointed Professionals Who Weaponized Psychological Tools to Punish Whistleblowing and Remove Parental Rights

From *2020 to present* Defendants across the judiciary, prosecutorial, and therapeutic institutions engaged in a coordinated scheme to retaliate against Plaintiff's protected speech and whistleblowing activity by fabricating narratives of mental instability.

Despite five independent and favorable mental health evaluations, Defendants:

➢ Ordered unnecessary psychological evaluations with the intent to entrap;
➢ Assigned biased, county-funded therapists with known conflicts;
➢ Mischaracterized spiritual and political speech as signs of mental illness;
➢ Circulated defamatory mental health claims to schools, courts, and public forums;
➢ Used therapy mandates as punitive control, not for the child's best interest;
➢ Abandoned trauma-informed practices in favor of high-conflict setups that further alienated the child.

**A. Key Actors and Misconduct:**

**1.** Judge (Romeo D4), DAs (Cava and McCollum D29, D30) misused a competence evaluation, and Judge (Owens D5) excessive evaluations and therapy, to discredit, entrap, harass, and punish Plaintiff, despite five favorable mental health evaluations.

**2.** Therapists (Landrum D52, Taylor D51, McCoy D5) issued perjured reports and testimony unsupported by clinical evidence based on solely hearsay and bias.

**3.** Mental health professionals ignored abuse and alienation by the mother while emotionally manipulating the child to falsely pathologize Plaintiff.

1    **4.** *4-5-2023 to present* punitive therapy was orchestrated by Judge (Owens D5) to

2         harass, provoke, entrap, and psychologically abuse Plaintiff and his young child, in

3         a *post hoc* effort to justify the unconstitutional removal of his Parental rights.

4    **5.** From *2013 to present* law enforcement and SMART repeatedly defamed Plaintiff.

5    This conduct was not based on clinical need but on retaliatory intent—to:

6    ➢ Discredit Plaintiff's reports of IHC child trafficking and fraternal corruption;

7    ➢ Undermine his legal credibility;

8    ➢ Remove him from parental and public life.

9

10   **B. Harm Incurred:**

11   As a result, Plaintiff suffered:

12   ➢ Emotional and reputational devastation;

13   ➢ Loss of parenting time and familial integrity;

14   ➢ Social and professional stigma based on false psychiatric labels;

15   ➢ Ongoing legal and institutional persecution under the pretense of care.

16

17   **CLAIM 10: Intentional Infliction of Emotional Distress**

18   Against Judges, CFI, CLR, Therapists, and School Personnel Whose Conduct

19   Caused Severe Psychological Harm Through Malice, Retaliation, and Neglect.

20   **A. Coordinated Harmful Conduct by Defendants**

21   From *2020 to present* Defendants engaged in malicious, and sustained conduct

22   designed to inflict psychological injury on Plaintiff and his minor child. Their actions were

23   neither accidental nor isolated, they were coordinated acts of retaliation and emotional

24   sabotage meant to punish, discredit, and sever the father-son bond. Conduct Included:

**28**

➢ Removal of Plaintiff's child without justification, despite no finding of unfitness;

➢ Over 150 court-ordered therapy sessions, ignoring 5 favorable evaluations;

➢ Therapeutic manipulation and gaslighting of both Plaintiff and child;

➢ Entrapment through mental health systems, turning therapy into surveillance;

➢ Suppression of maternal abuse, while scapegoating Plaintiff;

➢ Public and professional defamation, embedding stigma in schools, courts, and mental health records;

➢ Complete obstruction of visitation, even when court orders existed.

**B. Harm Incurred:**

1. PTSD, age regression, memory repression, arrested development and eczema;
2. Alienation and fear regarding his father and environment;
3. Long-term emotional confusion and loss of stability.
4. Ongoing depression, reputational harm, and isolation;
5. Physical deterioration, including permanent lung damage due to housing sabotage.
6. The destruction of his role as a father, advocate, and protector.

This pattern of emotional abuse and systemic coercion qualifies not only as *Intentional Infliction of Emotional Distress* (IIED), but also as a violation of fundamental parental rights, bodily integrity, and freedom from state retaliation. The harm was foreseeable. The pain was intentional. The damage is ongoing.

# V. CHILD RIGHTS & CUSTODY VIOLATIONS

**CLAIM 11: State-Enabled Child Abuse, Negligence and Exploitation**

From *2021 to present* Defendants including judges, therapists, school personnel, law enforcement officers, court-appointed professionals, and judicial actors, either actively inflicted or knowingly allowed ongoing psychological abuse of Plaintiff's young son.

1  These actions reflect both gross negligence and *Intentional Infliction of Emotional Distress*

2  (IIDE), committed and perpetuated under color of state authority.

3  **A. Negligent Supervision and Failure to Protect**

4  Despite repeated physical red flags (*eczema*), repeated reports, direct evidence,

5  observation, and court orders, Defendants failed in their legal and ethical duty to safeguard

6  the emotional well-being of a vulnerable child. Their misconduct included:

7  **1.** Suppressing known evidence of maternal abuse and trauma;
8  **2.** Obstructing parenting time and lawful reunification with Plaintiff;
9  **3.** Ignoring visible signs of distress, including age regression and eczema;
10  **4.** Allowing unauthorized therapeutic access and manipulation at school;
11  **5.** Refusing to intervene during illegal withholding of the child on multiple
12      occasions—even when law enforcement was on scene.

13

14  These failures led directly to the child's emotional deterioration, isolation, ongoing

15  psychological harm, and intentional deterioration of the father-son relationship.

16  **B. Coordinated Psychological Harm and Exploitation Through Therapy**

17  Key Defendants, including (Taylor D51, Landrum D2, McCoy D50, Courtney D49,

18  Mahler D53, and CLR Tarrin D34) intentionally used therapy as a tool to destabilize the

19  father-son bond, emotionally manipulate and reprogram the child. This cruel conduct was

20  orchestrated, condoned, and concealed by judge (Owens D5), and included:

21  ➢ Obstructing court order therapy and visitation;
22  ➢ Withhold the young child against his will and want to see his father;
23  ➢ Triggering age regression and trauma responses during therapy sessions;
24  ➢ Blocking neutral assessments and trauma-informed evaluations;

1  ➢ Spreading false reports and coercive narratives of instability;
2  ➢ Reinforcing maternal alienation while erasing the safe, loving role of child's father;
3  ➢ Manipulating school, therapeutic, and court records to reflect false risk assessments.

**C. Harm Incurred:**

1. PTSD, age regression, memory repression, anxiety, and eczema in the child;
2. Child's confusion, disassociation, and deepening alienation from Plaintiff.
3. Devastating adjustment disorder from a loving paternal relationship since birth;
4. Total loss of parental access despite no clear findings of harm or unfitness.
5. Repeated obstruction of Plaintiff's ability to intervene, protect, or even comfort his son during episodes of harm by mother, Building Hope therapists, and educators.

These actions constitute civil child endangerment and CAPTA violations, as well as the intentional exploitation of therapeutic authority to inflict lasting damage on a child for the purpose of financial gain, reinforcing unlawful custody restrictions, and silencing Plaintiff's protected speech and identity.

**CLAIM 12: Parental Rights Interference and Obstruction of Court Orders**

Against judges (D4, D5), clerks (D6), law enforcement (D7, D8, D15, D16, D18, D19,D20, D21), council (D36), mother (D37), her boyfriend (Canada D38), CLR (D34), therapists (D47, D48, D49, D50, D51, D52, D53), and educators (D39, D40, D41, D42, D4, D44, D45) for retaliatory interference to remove parental rights, obstructing Court Orders, malpractice, failure to protect, withholding a  child against his will, and leveraging a child to intentionally undermine a loving father-son relationship.

**A. School and Agency Interference with Visitation and Custody Orders**

1    From *2021 to present*, Defendants knowingly and willfully interfered with
2    Plaintiff's parenting rights and obstructed court-ordered visitation, therapy, and custody
3    directives. Their actions represent a coordinated and deliberate effort to sever the father-
4    son bond in violation of Plaintiff's constitutional rights and existing court orders.

5    School officials (D39 - D45) engaged in collusion with court officers (D5, D6, D34,
6    D46), the mother (D37), her boyfriend (D38) and Building Hope therapists (D47 - D50) in
7    ongoing efforts to undermine Plaintiff's role as father. In collusion they:

8    ➢ Obstructed visitation and delayed reunification therapy;
9    ➢ Disseminated false narratives portraying Plaintiff as dangerous;
10   ➢ Subjected the child to unauthorized questioning about legal proceedings and family
11   issues;
12   ➢ Violated FERPA protections and therapeutic neutrality.
13
14   County agencies (D1) and Building Hope (D47) and MHBHC (D47) leadership
15   failed to correct these violations, enabling repeated acts of alienation, emotional distress,
16   and custodial interference.

17   **B. Entrapment and Obstruction by Law Enforcement and Therapists**

18   On multiple occasions, including August 8 & 22, 2024, law enforcement (D7, D8,
19   D16, D18, D19, D21) and SMART (D9, D15) actively refused to enforce standing court
20   orders, allowing the child's mother to unlawfully withhold him despite the child's visible
21   distress and stated desire to return to his father.

22   Therapists McCoy, Taylor, Landrum, and Mahler (D50-D53) repeatedly violated
23   trauma-informed standard**s** by isolating the child in therapy sessions designed to provoke

emotional breakdowns. These actions ignored safety protocols recommended by neutral

trauma experts such as Dr. Rice PsyD. and directly undermined the therapeutic process.

Child Legal Representative - CLR (Tarrin D34) submitted a fabricated allegation of

strangulation, never ruled on by the court, and disseminated the defamatory claim to school

officials and therapy providers, resulting in reputational harm to Plaintiff and his child.

**C. Harm Incurred:**

➢ Severe emotional distress to the minor child;

➢ Procedural sabotage of family court proceedings;

➢ Entrapment of Plaintiff in hostile therapeutic and legal scenarios;

➢ Further alienation and obstruction of reunification;

➢ Ongoing trauma to both Plaintiff and his child.

These actions constitute not only violations of court orders and basic due process,

but a systemic effort to separate a child from his safe and loving parent through illegal

interference, manipulation, and abuse of institutional authority.


# XII - COORDINATED REAL-ESTATE FRUAD

**CLAIM 13: Property Fraud and Unjust Enrichment**

Against mother, her boyfriend, her counsel, judges, law enforcement, prosecutors,

and county agents for orchestrated retaliation to deprive Plaintiff of Property,

**A. Fraudulent Ownership Through Misrepresentation**

Plaintiff solely financed the purchase, maintenance, and improvement of his home.

Unmarried mother (Wehner D37), without financial contribution, fraudulently acquired

1  partial ownership of the property through misrepresentation and, with the assistance of

2  attorney (Rabin D36), initiated a partition action to force the sale of the home.

### B. Judicial Complicity in Real-Estate Fraud

4  Judge (Romeo D4) manipulated procedure to prioritize a partition over Plaintiff's

5  fraud unjust enrichment granted jury action, while actively obstructing the appeal

6  proceeding 2025CA501, despite clear documentary evidence of Plaintiff's sole investment

7  in the property. This has resulted in ongoing litigation designed deprive Plaintiff of

8  ownership, displace of out Summit County (D1), dismantle his parental role, and silence

9  his whistleblower voice by severing his residence, assets, and community connection.

### A. Harm Incurred:

➢ Financial loss and time through mother's extortion and blackmail;

➢ Housing duress and obstruction to repairs and remodel;

➢ Three years of lost financial, song writing, and music productivity;

➢ Three years of fatherly love, father-son adventures, enjoyment, and education.

# VII - STATE & FEDERAL SECURITIES VIOLATIONS

### CLAIM 14: Unlawful Surveillance and Securities Violations
### A. 5th District DA Intrusion into SEC/DORA Securities Computer

Plaintiff, a 29-year financial professional, forensic fraud specialist, and federally

regulated investment advisor, maintains sensitive client records protected under:

1. DORA - Colorado Securities Act C.R.S. § 11-51-101
2. Gramm-Leach-Bliley Act (GLBA), 15 U.S.C. §§ 6801–6827;
3. SEC Regulation S-P, 17 C.F.R. § 248.30(a) (Safeguards Rule);
4. Investment Advisers Act of 1940, SEC Rule 206(4)-7, 17 C.F.R. § 275.206(4)-7.

1    A forensic audit log confirms that Deputy District Attorney (Lauren Crisera D31)

2    engaged in unauthorized digital intrusion into Gladstone Financial's protected financial

3    systems. Evidence indicates DA Cisera maintained a persistent 26-day access tunnel from

4    *March 14, 2025, to April 9, 2025*, during which she downloaded and altered documents,

5    leaving her digital signature ("*author*" metadata) on over 100 files. The intrusion included

6    deletion of exculpatory evidence and other as-yet-undiscovered acts of digital tampering.

7    **This breach constitutes:**

8    **4.** Violation of the GLBA and SEC privacy safeguards;

9    **5.** Interference with federally protected fiduciary duties;

10   **6.** Breach of DORA and SEC regulatory client privacy law;

11   **7.** Violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030.

12   Plaintiff is required to report this breach to state DORA and federal SEC regulatory

13   authorities. and reserves the right to pursue civil and criminal remedies.

14   **EXHIBIT-H**: **Unauthorized DA Access Into G.F. DORA/SEC Securities System**

15   These violations extend beyond surveillance and judicial obstruction, they represent:

16   ➢ Unauthorized access to state and federally protected financial records;

17   ➢ Unlawful interference with interstate financial commerce;

18   ➢ Criminal misuse of public authority.

19   ➢ Fraud On The 5th District Court

20

21   **D. Harm Incurred:**

22   As a direct and proximate result of Defendant's (D31) actions, Plaintiff suffered:

23   **1.** Invasion of privacy and unknown exposure of financial client information;

24   **2.** Loss of data, time, and deletion and/or altercation of evidence;

25   **3.** Obstruction to fair and impartial adjudication on his home and child.

26

**35**

**C. Conclusion:**

This obstruction of justice, evidence suppression, digital intrusion, and professional sabotage constitutes a violation of both federal and state financial securities, regulatory, and whistleblower protection laws, and supports liability under statutory, constitutional, and tort frameworks, including but not limited to 42 U.S.C. §§ 1983 and 1985.

This unlawful intrusion into DORA/SEC protected digital securities files by officers of the 5th District Court is the final and undeniable breach in a longstanding pattern of judicial and prosecutorial misconduct in Cases 2022CR96, 2022DR29 and 2024CV30108.

It constitutes ***Fraud On The Court*** under Rule 60(d)(3) of the Federal Rules of Civil Procedure, triggering the immediate legal necessity for vacatur of all prior orders, immediate recusals, transfer to a neutral venue, and full and immediate restoration of Respondent-Father's equal parental rights and time to prevent further harm to his child.

Under the penalties of perjury, I Stephen Theodore Gladstone, bonded by my honor to God, affirm all herein and above is true and accurate to the very best of my knowledge.

Submitted on this 11th day of April 2025,


_____
Stephen Theodore Gladstone
Petitioner
*Sui Juris, In Propria Persona*